**In re Jack J. GRYNBERG, Debtor.**

**Albert HAYUTIN, Plaintiff,**

**v.**

**Jack J. GRYNBERG, Defendant.**

**Bankruptcy No. 81 B 00821 C.
Adv. No. 82 J 0420.**

United States Bankruptcy Court,
D. Colorado.

Feb. 2, 1988.

Daniel L. Woodrow, Glicksman, Woodrow & Shaner, Denver, Colo., for Albert Hayutin.

Ernest Lohf, Stephen E. Kapnick, Lohf, Shaiman & Ross, P.C., Denver, Colo., for Jack J. Grynberg.

William D. Scheid, Scheid & Horlbeck, P.C., Denver, Colo., for Celeste Grynberg.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.*

After hearing testimony of witnesses for Plaintiff and Defendant and receiving other evidence at the trial of this case beginning January 12 and ending January 15, 1988, the Court makes findings of fact, conclusions of law and adjudicates issues as follows:

## INTRODUCTORY

This case arises on objections asserted by Debtor-Defendant Jack J. Grynberg ("Grynberg") to Proof of Claim No. 125 (the "Claim") filed by Plaintiff Albert Hayutin ("Hayutin") against Grynberg's Chapter 11 estate. The Claim incorporates Hayutin's prepetition complaint, alleging four claims for relief, filed on January 16, 1977, in Case No. C–69176 (the "Denver Action") in the District Court in and for the City and County of Denver, Colorado against Grynberg and his wife, Intervenor Celeste C. Grynberg, the debtor in Case No. 81 00825 C in this Court.

By Order on March 12, 1982, upon motions for summary judgment, the Honorable John P. Moore dismissed Hayutin's Third and Fourth Claims asserted against Grynberg and all Hayutin's claims asserted against Celeste C. Grynberg. Pursuant to this Court's Order on November 20, 1987, Celeste C. Grynberg was permitted to intervene and participate in the trial by reason of her claim of ownership of 760,000 of the Shares and her interest in the outcome arising by virtue of the joint plan of reorganization of Grynberg and Mrs. Grynberg which Judge Moore confirmed on April 21, 1982.

This Court's Order on November 20, 1987, limited the trial to the issues raised

*Of the District of Rhode Island, sitting by desig-

by the First and Second Claims For Relief alleged against Grynberg in the Denver Action, Grynberg's denial of their material allegations and other defenses and objections asserted thereto and to Claim No. 125. The First and Second Claims relate generally to 1 million shares (the "Shares") of stock issued by Oceanic Exploration Company ("Oceanic Exploration"), as to which Hayutin claimed ownership, evidenced by unindorsed Certificates Nos. DCU 2360 and DCU 3662, registered in the names of Celeste C. Grynberg and Oceanic Holding Company ("Oceanic Holding"), respectively.

At a lengthy pretrial conference on January 11, 1988, the parties presented a detailed Stipulation dated July 7, 1987, as to undisputed facts and other matters, including many exhibits, and a form of Joint Pretrial Order, which the Court adopted. The complaint in the Denver Action is Exhibit 1 to the Stipulation. The Court bases its rulings, findings, conclusions and adjudications upon the entire record and all the testimony and other evidence which the parties presented in accordance with the Bankruptcy Rules, whether at trial or otherwise.

The testimony as a whole and in many specific instances conflicted sharply as to events, statements and other facts of crucial significance to Hayutin's claims. To the extent necessary to the Court's Findings of Fact and Conclusions of Law, the Court has resolved such conflicts in favor of Grynberg and against Hayutin. These Findings of Fact and Conclusions of Law are qualified in their entirety by reference to the transcript of the Court's Findings of Fact and Conclusions of Law dated January 15, 1988.

## DISPOSITION OF MOTIONS

At or before the pretrial conference, Grynberg filed pretrial motions, upon which the Court reserved its ruling. The Court now rules as follows:

a. Hayutin having been permitted to explain the absence or unavailability of

nation.

the originals of the stock powers upon which he relied to establish his ownership of the Shares, the motion to limit or exclude secondary evidence of any such stock powers, filed on January 11, 1988, is denied.

b. The motion to limit evidence of statements by Grynberg that he had transferred ownership of the Shares to Hayutin, served on January 11, 1988, is denied.

c. The motion, served on January 9, 1988, to limit the trial to the Shares as to which Hayutin had not transferred his interest to third persons is denied.

d. The Court finding, as hereinafter set forth, that Hayutin never received stock powers, the motion based on the Uniform Commercial Code is granted for the reasons stated in Grynberg's pretrial memorandum, filed January 8, 1988, concerning the effect of the Uniform Commercial Code.

Motions at the trial are granted and denied as follows:

e. Treating the colloquies during the trial among the Court and counsel regarding amendment of the complaint and financial services which Hayutin claims to have performed as a motion to amend Hayutin's 1977 complaint in the Denver Action or his proof of claim, the Court denies that motion. The Court notes that, in a telephone hearing before the trial upon Grynberg's motion in limine resulting in this Court's Order on November 20, 1987, limiting the scope of the trial, and again upon commencement of the trial, Hayutin's counsel expressly disclaimed any intention to seek any such amendment. Moreover, Hayutin did not attempt to offer any evidence of the value of any financial services.

f. Principally on the ground that Hayutin did not present credible evidence of his ownership of the Shares, the Court now grants Grynberg's motion to dismiss made at the end of Hayutin's case in chief. This ruling is also based on the totality of the evidence.

## FINDINGS OF FACT

Based on all the evidence and the entire record, the Court makes the following explicit Findings of Fact in addition to or in supplementation of undisputed facts set forth in the Stipulation and all other factual findings necessarily implicit in the Court's Conclusions of Law and its adjudication of this case:

1. Grynberg did not agree in late 1975 or early 1976 to deliver ownership of the Shares to Hayutin notwithstanding that, in January 1976, Grynberg delivered or caused to be delivered to Hayutin the unindorsed certificates evidencing the Shares. The purpose of that delivery, whatever else it may have been, was not to transfer ownership of the Shares to Hayutin.

2. Grynberg never delivered or caused to be delivered to Hayutin any stock powers relating to the Shares, and Hayutin is unable to produce the stock powers or a copy thereof because they never existed.

3. Although Grynberg had apparent and probably actual authority to deliver possession of the Oceanic Holding certificate to Hayutin, Grynberg had no authority to deliver to Hayutin title or ownership of that portion of the Shares evidenced by Certificate No. DCU 3662.

4. Hayutin made no inquiry concerning Grynberg's authority to transfer title to or ownership of the Shares to Hayutin.

5. Hayutin redelivered possession of the certificates evidencing the Shares, at least constructively, to Norman Singer at Oceanic Exploration, who signed a receipt therefore on February 17, 1976.

6. When the certificates evidencing the Shares were subjected to the February 10, 1976 Voting Trust Agreement and, approximately contemporaneously, were pledged to Morgan Guaranty Trust Company of New York, Hayutin had no communication with the voting trustees concerning the certificates and had no such communication thereafter.

7. Grynberg engaged in no conduct prior to commencement of the Denver

Action on January 16, 1977, or prior to filing his voluntary petition under Chapter 11 of the Bankruptcy Code on February 20, 1981, which could be a basis for the conversion of the Shares alleged in the First Claim or for the indebtedness alledged in the Second Claim in the Denver Action.

In view of the foregoing findings, the Court considers unnecessary any findings as to damages or whether Hayutin transferred or agreed to transfer any interests in the Shares to third persons.

## CONCLUSIONS OF LAW

In addition to any conclusions of law necessarily implicit in the Court's adjudication of this case, the Court expressly concludes as a matter of law:

1. Hayutin's contentions as to how he became the owner of the Shares being highly implausible as a matter of fact, Hayutin has not discharged his considerable burden of proof necessary to establish his ownership of the Shares upon which he premises his claims.

2. Grynberg engaged in no conduct prior to the filing of his voluntary petition in this Court under Chapter 11 of the Bankruptcy Code on February 20, 1981, constituting a conversion of the Shares or creating any indebtedness as alleged in the First and Second Claims For Relief in the Denver Action, respectively.

3. Hayutin's consent to or acquiescence in subjection of the Shares to the February 10, 1976 Voting Trust Agreement and the June 2, 1976 amendment thereof and related option do not bar his claims absolutely as a matter of law but are strong evidence against his contentions.

4. Hayutin's failure to file any report of beneficial ownership of the Shares under Sections 13(d)(1) and 16(a) of the Securities Exchange Act of 1934 and his failure to file tax returns reporting the Shares as income do not bar his claims absolutely as a matter of law but are strong evidence against his contentions.

5. Hayutin's recovery is barred by Sections 8–101 *et. seq.* of the Uniform Commercial Code as then in effect in Colorado, C.R.S. Sections 4–8–101 *et seq. See* Defendant's pretrial memorandum concerning effect of Uniform Commercial Code filed January 8, 1988, which the Court adopts, and particularly *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) cited therein.

6. Hayutin has no post-petition claim, on the basis of his prepetition claims or otherwise, against Grynberg's Chapter 11 estate to proceeds of sale of the Shares upon the settlement with Oceanic Exploration during the course of Grynberg's Chapter 11 case.

7. Grynberg lacked actual authority to transfer ownership of any of the Shares to Hayutin.

8. Any claim by Hayutin to 240,000 of the Shares evidenced by Certificate DCU 3662 is further barred by his failure to take reasonable steps to verify Grynberg's authority to transfer ownership thereof to Hayutin.

9. Hayutin's ownership of the Shares not being sustainable upon the evidence or the facts as found, any representations by Grynberg to third persons, if made, that he had given 1 million Oceanic Exploration shares to Hayutin does not give rise to a cognizable claim within the scope of the issues which were tried.

10. Hayutin's delivery to Norman Singer on February 17, 1976, of possession of the certificates evidencing the Shares involved no loan by Hayutin of the Shares or other property having any value.

11. On the evidence presented, Grynberg is not estopped to deny transfer of the Shares to Hayutin.

12. As the prevailing party, Grynberg may recover costs taxable in accordance with applicable law.

The Court considers unnecessary any conclusion as to applicability of the Statute of Frauds, as in effect in Colorado, in re-

**572**

spect to the First and Second Claims alleged in the Denver Action.[1] Similarly, the Court considers unnecessary any conclusion as to other issues of law which were raised in connection with Hayutin's proof of claim and the objections thereto, such as whether Hayutin's claims are barred in whole or in part for lack of a real estate license or by principles of collateral estoppel. If any conclusion of law stated herein properly is a finding of fact, such conclusion shall be deemed to be such a finding; and *vice versa.*

WHEREFORE THE COURT ADJUDGES AND DECREES:

1. Hayutin's Proof of Claim No. 125 filed in this Court based on his complaint in the Denver Action should be and is disallowed.

2. To any extent that the Civil Action No. C–69176 commenced in the District Court in and for the City and County of Denver, State of Colorado, in January, 1977, may be deemed a civil action properly removed to this Court by stipulation of the parties or otherwise, Hayutin's complaint and such action should be and is dismissed with prejudice.

3. Grynberg is allowed his costs, including possibly attorneys' fees if applicable, in an amount to be fixed by the Court after due application, to the extent taxable in accordance with applicable law.

4. Hayutin shall bear all costs of his physical examination by a cardiologist pursuant to this Court's Preliminary Order Upon Motion to Dismiss filed July 9, 1987.

The Clerk is directed to prepare a separate judgment as required by Bankruptcy Rule 9021 in conformity herewith. A timely motion to alter, amend or vacate the judgment entered herein by the Clerk on January 15, 1988, having been filed and heard by telephone conference on January 25, 1981, that judgment, if not previously

vacated, shall be vacated *nunc pro tunc* as of January 15, 1988.

---

1. This determination in no way limits or otherwise affects the determinations of Judge Moore in his Order on March 12, 1982, in respect to application of the Statute of Frauds to the Third and Fourth Claims alleged in the complaint in the Denver Action.